UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| CARTER STEPHENS,<br><br>               Plaintiff,<br><br>   v.<br><br>MARINO WHITE O'FARRELL &<br>GONZALEZ, et al.,<br><br>               Defendants. | CASE NO. C10-5820BHS<br><br>ORDER GRANTING IN PART<br>AND DENYING IN PART<br>PLAINTIFF'S MOTION FOR<br>DEFAULT JUDGMENT |

This matter comes before the Court on Plaintiff's ("Stephens") motion for default judgment (Dkt. 63). The Court has considered the pleadings filed in support of the motion and the remainder of the file and hereby grants in part and denies in part Stephens' motion for default judgment as discussed herein.

**I. PROCEDURAL HISTORY**

On April 5, 2011, this case was reassigned to the undersigned. Dkt. 41. On April, 15, 2011, the Court denied Stephens' premature motion for summary judgment. Dkt. 42.

On May 16, 2011, Stephens moved for an order of default pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 55(a) against JM International Commercial Consultants, Inc. ("JMICC"), Mark Allen Creson ("Creson"), and MP Investments. Dkt. 46. On May 26, 2011, the Court denied Stephens' motion for an order of default because of improper service. Dkt. 48.

On June 2, 2011, Stephens voluntarily dismissed MP Investments. Dkt. 54. After properly serving JMICC and Creson, Stephens renewed his motion for an order of default against JMICC and Creson, which the Court's Clerk granted. *See, e.g.,* Dkts. 59, 62.

On July 18, 2011, Stephens moved the Court's Clerk to enter default judgment pursuant to Fed. R. Civ. P. 55(b)(1) (entry by clerk).

## II. FACTUAL BACKGROUND

Stephens filed this action under Sections 1964(a), (b), and (c) of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1964. Second Amended Complaint ("SAC") ¶ 1. Stephens also filed his action under Section 1965(a)(b)(d) of RICO. *Id.*

Stephens alleges that his life insurance policy representative put him in touch with a purported investment counselor, Creson. SAC ¶¶ 3-5. In early June 2009, Stephens began communicating with Creson regarding an investment program. *Id.* ¶ 6. Stephens further alleges that Creson offered him an investment deal that would entitle him to receive twenty-five percent return on a weekly basis for the life of the investment of $250,000. *Id.* ¶ 7.

Stephens decided to invest his $250,000 with Creson. *See, e.g., id.* ¶ 8. Creson requested that Stephens wire the funds to an escrow company, JMICC. *Id.* Stephens wired the cash in two disbursements, $100,000 and later $150,000, to Creson on the belief that that money would then be transferred to JMICC. Declaration of Carter Stephens (Stephens Decl., Dkt. 65) ¶¶ 19-21; Stephens Decl., Exs. 3-4 (wire transfer documents).

On August 23, 2009, Stephens executed a joint venture agreement (the "Agreement") with Creson. Stephens Decl. ¶ 18; *id.*, Ex. 2 (copy of agrement). In pertinent part, the Agreement expressly provides as follows:

> Although Venture Partner *does not hereby guarantee any minimum monthly returns* to the Investor Principal, the Parties hereby acknowledge the intent of this Agreement shall be that Principal receive *up to but no to*

ORDER - 2

*exceed* twenty five percent (25%) of Investment each week for the duration of this Agreement. INTEREST AMOUNT IS BASED ON [PRINCIPAL] INVESTED WITH THE COMPANY.

*Id*. at 1 (Emphasis added). Creson and Stephens signed the Agreement. *Id*. at 5.

Stephens alleges that he never received any distributions of interest from his investment, and he did not receive his principal investment back. He further alleges that Creson caused him to be the victim of a scheme to defraud him through a pattern of racketeering. Stephens asserts he is entitled to damages in the amount of $16,500,000.00.[1] Dkt. 63 (motion for default judgment). Stephens also asserts his counsel is entitled to attorneys fees, costs, expenses, and charges incurred in connection with this case in the amount of $3,325,648.75 (fees) and $1350 (costs). Dkt. 63-1 (proposed order of default judgment). The total award requested is $19,826,987.75. *Id*.

Finally, although served, JMICC and Creson have not appeared in this matter.

### III. DISCUSSION

**A.  Standard**

The standard for entering a default judgment is as follows:

> **(1) By the Clerk.** If the plaintiff's claim is for *a sum certain or a sum that can be made certain by computation*, the clerk–on the plaintiff's request, with an affidavit showing the amount due–must enter judgment for that amount and costs against a defendant who has been defaulted for not appearing and who is neither a minor nor an incompetent person.
> **(2) By the Court.** In all other cases, the party must apply to the court for a default judgment.

---

[1]Stephens submits the following equation to arrive at the damages request:
Movant is entitled an award of damages, including both the $250,000.00, and the $62,500.00 in weekly agreed upon profits [25% of $250,000.00, commencing 23 September 2009, and continuing up through and including the date of entry of judgment herein,] nomovants confirmed that movant was entitled to receive upon movant's $250,000.00, principal, plus lost profits of $5,250,000.00, totaling $ 5,500,000.00, trebled pursuant to RICO §1964(c), equaling $16,500,000.00, (21 months x $250,000 @ month [$25% of $250,000.00 = $62,500.00, every week]).
Dkt. 63 at 5.

Fed. R. Civ. P. 55(b) (bolding in original, emphasis added). Stephens moves for default judgment under Rule 55(b)(1) (by the clerk). Dkt. 63.

Here, the Agreement at issue expressly contemplates that Stephens could get a return of zero percent and up to but not to exceed twenty-five percent. Stephens Decl., Ex. 2 at 1 ("Venture Partner does not hereby guarantee any minimum monthly returns"). Stephens' request for damages assumes, incredibly, that he would obtain the maximum, twenty-five percent return on his investment, weekly, for twenty-one months straight. Putting aside that such a return is unbelievable, the damages requested have not been shown to be a sum certain or one that can be made reasonably certain by calculation: Stephens' simplistic equation is predicated on an unpromised, maximum return.

Because Stephens' damages request relies on a lost "profits" calculation that is not reasonably certain and cannot be made reasonably certain considering the record before the Court, Rule 55(b)(1) is not the appropriate vehicle for default judgment in this case. Instead, Stephens' motion would be more properly characterized as one for default judgment under Rule 55(b)(2) (by the Court). The Court construes the motion for default judgment to have been properly brought under Rule 55(b)(2) to avoid any further unnecessary filing in this case.

**B. RICO**

In order to establish a RICO claim under 18 U.S.C. § 1962, Stephens must properly allege (1) the conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. *See Smith v. Jackson*, 84 F.3d 1213, 1217 (9th Cir. 1996); *see also* 18 U.S.C. §§ 1962 (a)-(c). "Racketeering activity" is any act indictable under the several provisions of Title 18 of the United States Code, including the predicate acts alleged by Stephens in this case: mail fraud (18 U.S.C. § 1341) and wire fraud (18 U.S.C. § 1343); *Smith*, 84 F.3d at 1217.

The Ninth Circuit has repeatedly insisted that Fed. R. Civ. P. 9(b), which requires a pleader of fraud to detail with particularity the time, place, and manner of each act of fraud, as well as the role of each defendant in each scheme, be followed in RICO actions alleging the predicate acts of mail or wire fraud. *See Lancaster Community Hosp. v. Antelope Valley Hosp. Dist.*, 940 F.2d 397, 405 (9th Cir. 1991); *Moore v. Kayport Express, Inc.*, 885 F.2d 531, 541 (9th Cir. 1989). The rule of particularity requires the plaintiff to plead with specificity both the alleged fraudulent conduct and the use of the mails and/or wires. *See Lancaster*, 940 F.2d at 405. General allegations regarding use of the mails are too vague to satisfy the dictates of Rule 9(b).

The United States Supreme Court has held that a plaintiff must prove "continuity of racketeering activity, or its threat." *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 241. In *H.J. Inc.*, the Supreme Court noted that proof may come "in a variety of ways, thus making it difficult to formulate in the abstract any general test for continuity." *Id*. Even though no general test is applicable, the *H.J. Inc*. Court noted it could begin to delineate the requirement. *Id*. (going on to discuss a variety of hypothetical RICO violations involving multiple schemes, singular schemes, open-ended and closed-ended schemes).

Here, Stephens has supplied the Court through declaration and documentation evidence that tends to support his claims that Creson used mail and wire to carry out the alleged scheme to defraud Stephens of his $250,000. *See* Stephens Decl. The evidence supplied to inform the Court of this alleged pattern of racketeering activity is in the form of (1) emails between Stephens and Creson, (2) phone calls alleged to have taken place during the period of the initiation of the alleged scheme, (3) the Agreement executed between Stephens and Creson, (4) copies of the documents evidencing a wire transfer of Stephens' funds to Creson for use in the alleged scheme, and (5) documents mailed to Stephens by persons and entities alleged to be a part of the scheme to defraud Stephens

and perhaps others. *See, e.g., id.*, Exs. 1-20. The duration of the alleged scheme began in May of 2009 (SAC ¶ 2) and lasted at least until April of 2010 (SAC ¶ 26, identifying list of communications from Creson and others to Stephens regarding his investment).

The Court has reviewed these documents and is satisfied that they establish the requisite elements of a RICO claim because Stephens has established through competent evidence that, for purposes of default judgment, he was the victim of a fraudulent effort or scheme carried out through a pattern of racketeering. *See H.J. Inc*. at 241-243 (holding that even a single effort or scheme to defraud can constitute a RICO violation where the predicate acts extended over a significant period – more than a few weeks or months).

Therefore, Stephens is entitled to default judgment. *See* Fed. R. Civ. P. 55(b)(2).

**C. Damages**

**1. Stephens' RICO Damages**

"The measure of civil damages under RICO is the harm caused by the predicate acts constituting the illegal pattern. These damages must be 'established by competent proof, not based upon mere speculation and surmise.'" *Ticor Title Ins. Co. v. Florida*, 937 F.2d 447, 451 (9th Cir. 1991). Section § 1964(c) allows "[a]ny person injured in his business or property by reason of a violation of" RICO to sue and, if successful, recover treble damages and attorney's fees. However, to ensure that RICO does not expand to provide "a federal cause of action and treble damages to every tort plaintiff," the Ninth Circuit requires that plaintiffs show a concrete financial loss proximately caused by a defendant's violation. *Oscar v. University Students Co-op Ass'n*, 965 F.2d 783, 786 (9th Cir.) (en banc), *cert. denied*, 113 S. Ct. 655 (1992).

As an initial matter, because the Agreement between Creson and Stephens did not actually contemplate a minimum payment of interest to Stephens (i.e., return on investment) and because Stephens has not supplied the Court with competent evidence that he could have expected any return on the investment he made with Creson, the Court

does not award any damages related to the so-called lost "profits." Excluding attorney fees/costs and having removed lost "profits" from Stephens' requested award, Stephens' remaining request is for a flat $250,000, the amount of his principal investment with Creson. Dkt. 63-1. Stephens has supplied competent evidence to establish that Creson deprived him of $250,000 through a pattern of racketeering under RICO. *See, e.g.*, Stephens Decl., Exs. 1-20.

Therefore, Stephens is entitled to a damage award of $250,000, which is to be trebled pursuant to RICO's provisions for a total of $750,000.

### 2. **Attorney Fees and Costs**

RICO provides for recovery of reasonable attorney fees and costs. 18 U.S.C. 1964(c). Stephens requests $3,325,648.75 in attorney fees and $1350 in costs. Dkt. 63-1 (proposed order for default judgment). This request is predicated on an assumed damage amount of $16,500,000, which is not being awarded herein. Therefore, the request for attorney fees and costs is miscalculated, but Stephens may recalculate and renew his motion for an award of attorney fees/costs.

Should Stephens renew his motion for attorney fees, the Court will require an accounting of services rendered by Mr. Dean Browning Webb ("Webb"). The Court is unlikely in this case to award attorney fees in excess of the reasonable market value of Webb's services for hours reasonably spent working on this matter. *See New Vision, Inc. v. Financial News Network, Inc.*, 842 F.2d 335 (9th Cir. 1988) (holding district court did not abuse its discretion in limiting attorney fees to reasonable market value of services rendered).

Therefore, the Court denies Stephens' request for attorney fees and costs at this time. The Court may order Webb to appear in Court for a hearing on the fees requested, if such a request is renewed.

**IV. ORDER**

Therefore, it is hereby **ORDERED** that Stephens' motion for default judgment Dkt. 63 is **GRANTED in part** and **DENIED in part** as discussed herein.

DATED this 11th day of August, 2011.

BENJAMIN H. SETTLE
United States District Judge

ORDER - 8